## In re FOREST GROVE, LLC, Debtor.

### No. 10–05542–DD.

United States Bankruptcy Court,
D. South Carolina.

March 3, 2011.

Opinion Denying Motion to Alter
or Amend and for Stay
April 7, 2011.

guarantors. It also shows a level of confidence on the part of the debtor that it believes in the accuracy of its appraiser. However,

the Debtor in this case has not offered to remove the guarantor release language from its Plan.

David K. Pinckney, David Kennedy Pinckney, LLC, Bluffton, SC, John J. Pinckney, The Law Office of Dean B. Bell, LLC, Hilton Head Island, SC, for Debtor.

## ORDER DENYING DISCLOSURE STATEMENT AND DISMISSING CASE

DAVID R. DUNCAN, Bankruptcy Judge.

This matter is before the Court on Forest Grove, LLC's ("Debtor") Disclosure Statement, Ameris Bank's ("Ameris") Objection to Disclosure Statement ("Objection"), and Ameris's Motion to Dismiss Debtor's Chapter 11 Case ("Motion"). Debtor filed its original Disclosure Statement and Plan on November 18, 2010, and Ameris filed its Objection on December 28, 2010. Ameris also filed its Motion on the same day. Debtor filed a Response to Ameris's Objection ("Response") on January 17, 2011. Two Addendums to Debtor's Disclosure Statement were also filed, one on February 7, 2011 ("First Addendum") and one on February 14, 2011 ("Second Addendum"). Debtor also filed an Objection to Ameris's Motion on February 7, 2011. Ameris filed a supplemental memorandum on February 11, 2011, detailing Ameris's continuing objections to Debtors' First Addendum. A hearing was held on Debtor's Disclosure Statement and Ameris's Motion on February 15, 2011. Pursuant to Fed.R.Civ.P. 52, made applicable to this proceeding by Fed. R. Bankr.P. 7052 and 9014, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtor filed for chapter 11 protection on August 2, 2010. Debtor is a limited liability company formed in 2001 to acquire and develop real estate. The CLM Irrevocable Trust ("Trust") is the sole member of Debtor, and the trustee of the Trust is Nickey Maxey ("Maxey"). Over the course of several years, Debtor acquired and developed real estate until it owned over 360 acres. Debtor used a portion of this real property to build an equestrian training facility, at an approximate cost of $1.4 million. There is also a residence located on the real property, which Maxey currently uses as his primary residence rent-free, as compensation for managing the property. However, Debtor's Disclosure Statement indicates that Maxey will pay rent in the amount of $2,000 per month in the future. Debtor's January 2011 monthly operating report indicates that this rent was paid.

In 2008, Debtor and Maxey signed a promissory note in the amount of $1,650,000 with Nexity Bank. The note was subsequently assigned to Ameris in 2009. The note is secured by four parcels of land, two of which are owned by Debtor, one of which is owned by the Trust, and one of which is owned by Maxey. It appears that this bankruptcy was filed in response to a foreclosure action filed by Ameris on March 1, 2010. Debtor's bankruptcy was filed just prior to the date of the foreclosure sale. Ameris is the sole objecting creditor to Debtor's Disclosure Statement.[1]

Debtor also owes BankMeridian, N.A. on a note in the original amount of $240,000, secured by the same four parcels of land. In 2009, Maxey entered into a settlement agreement with First South Bank ("First South") as a result of money

1. In fact, at the Disclosure Statement hearing, a representative for BankMeridian, N.A., Debtor's second priority secured creditor, indicated that BankMeridian approved of Debtor's Disclosure Statement and proposed Plan.

loaned to him by First South. The original amount of the settlement was $171,671.67, and Maxey executed a confession of judgment in the amount of $104,008.57, which was delivered to and held by First South. The First South debt is listed on Debtor's Schedule D as a judgment lien on all assets. The First South debt, along with the BankMeridian debt and Ameris debt, are Debtor's only secured debts. Debtor's Schedule F lists unsecured debt of only $4,893.02.

At some point after the filing of Debtor's chapter 11 petition, Debtor, believing that it was acting in the ordinary course of business, cut and sold timber from the property. Debtor received $28,584.41 from the sale of this timber. After being notified by the U.S. Trustee's office that such activity appeared not to be in the ordinary course of business, Debtor deposited the $28,584.41 into its debtor-in-possession account. Debtor subsequently used some of the funds to pay bills, but upon being notified once again that it had acted improperly, Maxey personally contributed funds to reimburse the amount spent. Debtor's Response and First Addendum indicate that Debtor intends to use these funds to pay administrative costs.

Debtor's Disclosure Statement indicates that Debtor's chapter 11 plan will be funded with revenue from rent collected from Maxey, subdivision and sale of small lots, a "small and exclusive hunting preserve," and harvest of timber located on the property, if necessary. Debtor proposes to convey several parcels of real property to Ameris in full satisfaction of its claim. While Debtor's Disclosure Statement and Addendums indicate that the conveyance of property to Ameris will be sufficient to satisfy its claim in full, the documents also provide that if Ameris's claim is not satisfied, monthly payments will be made to

Ameris. The documents do not specify the amount of these payments. Debtor's Disclosure Statement indicates that once Ameris's claim is satisfied, rental income it receives from Maxey will be sufficient to make plan payments. Debtor's First Addendum indicates that Maxey's rent payments will be $2,000 per month. As of the date of the Disclosure Statement hearing, no written lease had been executed for Maxey's rental of the residence. The Disclosure Statement does not contain any information concerning Maxey's ability to pay rent or any other sums of money that may be required under Debtor's plan.

## CONCLUSIONS OF LAW

### I. Debtor's Disclosure Statement

Ameris's Objection asserts that Debtor's Disclosure Statement is deficient in a number of respects. Ameris's supplemental memorandum sets forth specific questions which Ameris asserts still remain unanswered following the filing of Debtor's First Addendum. Ameris's primary continuing objections to Debtor's Disclosure Statement and Addendums essentially are that adequate information is not provided regarding Debtor's financial condition and affairs, Maxey's income and contributions to Debtor, and Debtor's ability to fund its plan.

11 U.S.C. § 1125(b) requires that before a debtor can solicit acceptance of a plan, he must provide a disclosure statement approved by the court "as containing adequate information" to creditors. Section 1125(a)(1) defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal

tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but ... need not include such information about any other possible or proposed plan.

Section 1125(a)(1) also states that when considering whether to approve a disclosure statement as containing adequate information, the court must consider "the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information." Ameris's detailed objections to numerous specific aspects of Debtor's Disclosure Statement necessitates that the Court examine each of the specific aspects of Debtor's Disclosure Statement individually, in order to determine whether the Disclosure Statement presents adequate information pursuant to section 1125.

## A. Miscellaneous Disclosure Statement Provisions

Ameris contends that numerous provisions of Debtor's Disclosure Statement do not contain adequate information. Subsequent to the filing of Ameris's Objection, Debtor filed a Response, as well as its First Addendum. These documents apparently cured many of Ameris's original objections, as Ameris did not again address several issues in its supplemental memorandum. Because Ameris no longer objects to these miscellaneous provisions, the Court has not addressed them in this Order. Those provisions to which Ameris has stated a continuing objection, as well as those provisions that cause the Court concern, are individually discussed below.

## B. Administrative Costs

■ Ameris originally objected to the adequacy of information regarding Debtor's administrative costs and how they will be paid. Debtor's Disclosure Statement states, "Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan ... in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor." Disclosure Statement, docket entry # 28. Debtor's Response indicates that Debtor's only administrative costs are U.S. Trustee fees, real property taxes, and Debtor's counsel fees. The Response further indicates that these costs will be paid from "sources including the $28,584.41 in funds representing the proceeds from the sale of timber ...." and if additional funds are necessary, they will be provided by either the Trust or Maxey personally. Debtor's Response, docket entry # 46. Debtor's First Addendum also proposes to harvest timber from parcels of real estate being retained by Debtor in order to generate income to pay these claims. Debtor's Response and First Addendum provide a breakdown of Debtor's estimates of its administrative costs. Ameris's supplemental memorandum sets forth no continuing objection.

It appears that Debtor has provided sufficient information regarding the amount of its administrative costs; however, Debtor has been less than forthcoming regarding the source of funds that will be used to satisfy these costs. Debtor has indicated this money will come from timber proceeds, both those already in Debtor's possession and those that may later be earned. However, Debtor has also indicated that in the event this amount is insufficient to satisfy its administrative costs, either the Trust or Maxey will personally satisfy the claims. Debtor does not pro-

vide any information regarding the Trust or Maxey's actual ability to fund these expenses. This issue will be discussed in more detail below; for purposes of this aspect of Debtor's Disclosure Statement, the Court finds that Debtor's failure to provide information pertaining to Maxey's and the Trust's financial situations leaves the Disclosure Statement deficient.

*C. Debtor's Future Income and Expenses*

■ Ameris complains that Debtor's Disclosure Statement does not provide any information regarding the amount or sources of Debtor's future income and expenses. Ameris asserts that based on the information set forth in the monthly operating reports, it appears that Debtor has no income and therefore Debtor's Plan is not feasible. This is one of Ameris's primary continuing objections and reasons for requesting dismissal of Debtor's case. Debtor responds that its only future expenses are payments on debts other than Ameris's and any expenses associated with the residence located on the property. Debtor further asserts that the residence expenses will be offset by rental income paid by Maxey in the amount of $2,000 per month, plus taxes, utilities, and insurance. Debtor's Disclosure Statement and First Addendum provide that Debtor's future income will come from Maxey's rental payments, possible rental of the guest house on the property, the management of a hunting preserve, possible subdivision and sale of small lots, and possible harvesting of timber. Ameris continues to object in its supplemental memorandum, stating that Debtor has still failed to show it has any income.

Debtor's statement of potential sources of revenue is speculative, at best. The sources Debtor lists are possible opportunities for income, not proven sources of current or future income. Debtor states that it has the potential to engage in activities such as operating a hunting preserve and selling small lots, but at the present time, it has not actually done so. Further, no information is provided concerning the market for these endeavors or the income and expenses associated with them. Additionally, while it appears that Maxey has previously made contributions to Debtor, Maxey has not heretofore paid rent to Debtor and has executed no written lease, and there is no information supporting Maxey's ability to continue making contributions. Debtor's Disclosure Statement indicates that Maxey was, until very recently, living in the residence on the property rent-free as compensation for managing the property. Thus, Maxey does not even have a history of payment that can help Debtor prove Maxey's actual ability to pay rent at the rate of $2,000 per month.

Because the success of Debtor's chapter 11 case is clearly contingent on Maxey's personal contributions, in order to provide adequate information, Debtor must disclose information regarding Maxey's financial situation that shows his ability to make such contributions. *See In re Repurchase Corp.,* 332 B.R. 336, 343 (Bankr.N.D.Ill. 2005) (holding that debtor company's president's declaration that his wife would contribute needed capital to the debtor was "sheer speculation and wishful thinking" in the "absence of any form of corroboration or contract from the alleged sources of the[ ] funds" and therefore could not satisfy feasibility requirement for plan confirmation); *In re Wiston XXIV, Ltd. P'ship,* 153 B.R. 322, 327–28 (Bankr.D.Kan.1993) (holding that plan was not feasible in spite of general partner's promise to contribute $100,000 because the general partner showed no proof he could actually make the payment). Debtor has not provided financial information concerning Maxey's

ability to make financial contributions in support of Debtor's plan. As a result, the Court is left with mere assertions by Debtor and Maxey that Maxey will personally contribute $2,000 per month in the form of rental income to the Debtor, along with additional contributions if necessary. This is insufficient to provide creditors with adequate information and assurance regarding Debtor's future income. While Debtor does not have to state with certainty the exact amount of its future income and expenses, in order to provide creditors with adequate information, more is necessary than what is provided here. *See In re Ferretti*, 128 B.R. 16, 21 (Bankr.D.N.H. 1991) (finding statement by the debtor that income and expenses are impossible to predict, but that based on the debtor's experience, the plan is feasible, is insufficient to provide adequate information). Debtor's Disclosure Statement is deficient in that it does not contain adequate information regarding Debtor's future income and expenses.

▉ Additionally, a court may deny approval of a disclosure statement, even if it is not by itself deficient, if a debtor's plan has no hope of being confirmed. *In re Bermuda Bay, LLC,* Nos. 09–32133 and 09–32130, 2009 WL 5218071, at *3 (Bankr. E.D.Va. Dec.31, 2009) (quoting *In re CRIMI MAE, Inc.,* 251 B.R. 796, 799 (Bankr. D.Md.2000)). In order for a debtor's plan to be confirmed, it must be feasible, meaning that it is reasonably likely to succeed. 11 U.S.C. § 1129(a)(11); *In re Travelstead,* 227 B.R. 638, 650–51 (D.Md.1998). Without proof of Maxey's ability to pay Debtor $2,000 per month in rent plus additional, unspecified contributions, Debtor cannot propose a feasible plan, as it has no income of its own. As a result, regardless of the adequacy of the information contained in Debtor's Disclosure Statement, approval of

the Disclosure Statement should be denied due to Debtor's inability to confirm a plan.

### D. Additional Objections

▉ Ameris's remaining objections appear to relate to general confusion regarding appraisal values, the timber cutting that occurred early in Debtor's case, and Debtor's retention of a certain portion of the real estate. As with many other aspects of Debtor's Disclosure Statement, Debtor has provided a significant amount of detailed information regarding all of these subjects. However, the information has been provided throughout numerous documents in bits and pieces, making it difficult to comprehend exactly what Debtor's Plan provides and exactly what treatment creditors can expect to receive.

Debtor's Disclosure Statement refers to an appraisal completed in May 2010 for BankMeridian on all four parcels as a whole. This appraisal stated that the value of the property was $2,798.65 per acre without improvements, and with improvements up to $4,897.64 per acre. Debtor used these values, plus a 30% risk factor, to calculate the total value of the property being conveyed to Ameris Bank as $1,708,316.19. Debtor's First Addendum provides information regarding a new, recent appraisal obtained by the Trust. This appraisal provides different valuations per acre for each parcel, and values the equestrian center, previously valued at $1,400,000, at $1,520,000. Debtor once again applied a 30% risk factor and calculated the value of the property being conveyed to Ameris at $2,035,500.

Ameris complains that providing these two different values is confusing and inconsistent. This is not necessarily the case. Debtor states in the Disclosure Statement and the First Addendum that the appraisals were obtained by two different parties at two different times. The appraisals

have been made available to Ameris. Simply consulting these two documents properly informs the reader of the basis for the different values. It appears that Debtor included the second appraisal in order to provide creditors with a more recent valuation of the property.

■ Ameris's supplemental memorandum expressed confusion regarding whether these appraisal values reflected the timber cutting that occurred post-petition. At the Disclosure Statement hearing, Debtor's counsel indicated that the most recent appraisal obtained by the Trust was obtained after the timber cutting occurred; however, this essential information is not provided in the Disclosure Statement or Addendums. A statement at a hearing by counsel which provides information to supplement a disclosure statement cannot cure that disclosure statement's failure to provide adequate information. Additionally, it remains unclear from Debtor's numerous filings which parcels Debtor cut timber from. In response to Ameris's continuing objection on this point, Debtor's counsel stated at the Disclosure Statement hearing that the timber that was sold post-petition was cut from Parcel IV, the tract being retained by Debtor. Debtor's counsel also reiterated that the appraisal obtained by the Trust was obtained after the timber cutting was completed. Debtor's counsel conceded that this information is not contained in the Disclosure Statement or Addendums and did not appear completely certain which tracts timber was cut from. Regardless of the statements made at the hearing, it remains unclear to the Court, and apparently creditors, what timber was removed and how it affected the parcel's valuation, if at all, especially in light of the fact that the information pre-

sented by Debtor's counsel at the hearing is not contained in any of the documents filed by Debtor.

Ameris also expressed confusion regarding which parcels are being retained by Debtor and which are being conveyed to Ameris to satisfy its claim. Debtor's Disclosure Statement indicates that Ameris will be receiving at least a portion of the parcels described as Parcel I, II, and III in full satisfaction of its claim. Ameris will receive 22 acres of Parcel III, currently owned by Debtor, on which the equestrian facility is located. Ameris will also be receiving all of Parcels I and II, which are titled in Maxey's and the Trust's names, respectively. Debtor will retain Parcel IV and the remainder of Parcel III. While this information regarding the property being conveyed to Ameris is contained in the Disclosure Statement, Ameris's confusion is warranted, as it is not clear exactly which 22 acres from Parcel III Ameris will receive.

Ameris presented additional miscellaneous continuing objections in its supplemental memorandum that it is unnecessary to address here.[2] The Court finds that Debtor's Disclosure Statement and Addendums are deficient in a number of respects relating to the property valuations and the funding of Debtor's plan. Debtor's continued failure to provide any information regarding the financial situation of Maxey and the Trust and their ability to make continued contributions to Debtor is fatal. Additionally, with respect to many aspects of the Disclosure Statement, even where information is adequate, it is provided in a piecemeal fashion that makes it difficult to understand Debtor's financial condition and prospects. The purpose of a disclosure statement is to clearly provide credi-

---

**2.** These issues included interest rate calculations, lack of information about real property taxes, potential claims by Debtor against Max-

ey, the Trust, or another insider entity, and lack of sufficient information about Maxey's lease of the residence on the property.

tors with information regarding the debtor's plan and their treatment under that plan. Creditors should not be required to go on a treasure hunt throughout multiple filings in order to ascertain that information. Based on these considerations, the Court finds that Debtor's Disclosure Statement does not contain adequate information and cannot be approved.

## II. Ameris's Motion to Dismiss

Ameris argues that Debtor's case should be dismissed based on the deficiencies in Debtor's Disclosure Statement, pursuant to section 1112(b) and 1112(b)(4)(C), and because "there is no 'reasonable likelihood that a plan will be confirmed within ... a reasonable period of time.'" Ameris's Motion to Dismiss, docket entry # 42. Debtor argues that its plan is or will soon be confirmable based on addendums filed by Debtor.

■ Section 1112(b) states:

[O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert ... or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

Section 1112(b)(4) provides a non-exhaustive list of situations which constitute "cause" for purposes of this section. Ameris first alleges that "cause" is present in Debtor's case because Debtor has "fail[ed] to maintain appropriate insurance [posing] a risk to the estate or to the public." 11 U.S.C. § 1112(b)(4)(C).

Ameris's Objection states that Debtor's Disclosure Statement does not provide any information regarding insurance on the property. Debtor's Response indicates that insurance coverage is maintained on the entire property, the cost of which is $7,532.00 per year. Additionally, Debtor's First Addendum states that the annual cost of insurance for the parcel where the equestrian center is located would be $7,500 and that Debtor has increased insurance coverage to $1,000,000. The First Addendum states that the cost of the increased coverage has not yet been determined, but will clearly increase above the original figure of $7,532.00 per year. Ameris's supplemental memorandum continues to advocate for dismissal of Debtor's case based on failure to maintain insurance, because Ameris alleges that insurance in the amount of $1,000,000 is not adequate based on the much higher replacement cost of the equestrian center. At the February 15 hearing on Debtor's Disclosure Statement, Debtor's counsel responded to Ameris's continuing objections, arguing that the difference between any appraisal values of the property and amount of insurance was both "justifiable and curable." Debtor's counsel additionally stated that Debtor would be willing to increase insurance coverage to the extent necessary to satisfy Ameris's objection.

Section 1112(b)(4)(C) states that cause for dismissal is established if a debtor fails to maintain sufficient insurance on his property at the risk or potential detriment of the estate or creditors. In Debtor's case, Ameris has not established cause under section 1112(b)(4)(C). Debtor is currently maintaining insurance in the approximate amount of the value of the equestrian center and offered to obtain additional coverage if necessary. Debtor has not failed to maintain insurance to the extent that it is creating a risk to its estate or creditors. Ameris has not established cause for dismissal under section 1112(b)(4)(C).

■ However, Ameris also alleges that Debtor's Disclosure Statement should be dismissed due to Debtor's lack of income and inability to confirm a plan within a reasonable time. On this basis, dismissal is warranted. Section 1112(b)(4)(A) provides that cause exists for dismissal if there is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." Section 1112 provides a debtor with certain opportunities to avoid dismissal, if it can show unusual circumstances, or if it can meet the test of section 1112(b)(2).[3] The Court finds that cause exists for dismissal, and Debtor has failed to meet its burden of showing its case should not be dismissed. Debtor's previous monthly operating reports show Debtor has no income, and Debtor's most recent monthly operating report, filed after the date of the hearing on the Disclosure Statement, shows only $2,000 of income, which is the amount of rent Maxey has agreed to pay Debtor. As stated above, no evidence has been provided regarding Maxey's financial circumstances and ability to pay rent and other expenses. Debtor's ability to earn income from other sources in the future is speculative and is not adequately discussed in the Disclosure Statement. Without income or a capital infusion, Debtor's plan cannot be confirmed. Therefore, cause exists to dismiss Debtor's chapter 11 case.

### CONCLUSION

Debtor's Disclosure Statement does not contain adequate information sufficient to inform creditors of their rights and treatment under Debtor's plan. As a result, approval of Debtor's Disclosure Statement is denied. Because Debtor has no proven income and no ability to confirm a chapter 11 plan, cause for dismissal exists. Debtor's chapter 11 case is dismissed.

AND IT IS SO ORDERED.

### ORDER DENYING MOTION TO ALTER OR AMEND AND MOTION TO STAY DISMISSAL

This matter is before the Court on a Motion to Alter or Amend Order of Dismissal ("Motion to Alter or Amend") and a Motion for Stay of Dismissal Order ("Stay Motion") filed on March 18, 2011 by Forest Grove, LLC ("Debtor"). Objections to both motions were filed on March 28, 2011 by Ameris Bank ("Ameris"). A hearing was held March 29, 2011. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.

### *FINDINGS OF FACT*

Debtor filed for chapter 11 relief on August 2, 2010. Debtor filed its original disclosure statement ("Disclosure Statement") and plan ("Plan") on November 18, 2010. Ameris filed an objection to Debtor's Disclosure Statement and a Motion to Dismiss ("Ameris's Motion") on December 28, 2010. Debtor filed a response to Ameris's objection on January 17, 2011. A hearing on Debtor's Disclosure Statement was scheduled for January 18, 2011, but was continued to February 15, 2011, the

---

**3.** Section 1112(b)(2) provides that a debtor's case should not be dismissed if "the debtor or another party in interest objects and establishes that—(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time;

and (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)—(i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court."

date Ameris's Motion was scheduled to be heard. Debtor filed an objection to Ameris's Motion and addendums to its Disclosure Statement ("First Addendum") and Plan ("First Plan Addendum") on February 7, 2011. Ameris filed a brief detailing its objections on February 11, 2011. Debtor filed second addendums to its Disclosure Statement ("Second Addendum") and Plan ("Second Plan Addendum") on February 14, 2011. A hearing was held on Debtor's Disclosure Statement and Addendums and Ameris's Motion on February 15, 2011. On March 3, 2011, the Court entered an Order denying approval of Debtor's Disclosure Statement and dismissing Debtor's case. Debtor filed its Motion to Alter or Amend and Stay Motion on March 17, 2011.

## CONCLUSIONS OF LAW

### I. Motion to Alter or Amend

#### a. *Standard for Motions to Alter or Amend*

Federal Rule of Civil Procedure 59(e) allows a party to file a motion to alter or amend a court's judgment within 28 days of the entry of the judgment. This rule applies in bankruptcy cases, although the time for filing such motions in bankruptcy cases is reduced to fourteen days. Fed. R. Bankr.P. 9023. Courts considering Rule 59(e) motions have stated that there are only three grounds for amending an earlier judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir.1993); *Clark v. Experian Info. Solutions, Inc.,* 2001 WL 1946329, at *5 (D.S.C. Mar. 19, 2001). Thus, in order for its Motion to Alter or Amend to be granted, Debtor must show that one of these three grounds is applicable to its case. The first

two grounds are not applicable here, as there has been no change in the law since the entry of the Court's Order, and Debtor did not present any new evidence that was not available at the time of the hearing on Ameris's Motion. As a result, in order for the Court to grant Debtor relief, Debtor must show that there was some clear error or manifest injustice in the Court's Order dismissing its case. For the reasons set forth below, Debtor cannot do so, and its Motion to Alter or Amend is denied.

#### b. *Local Rule 3016–1(c)*

■ Debtor relies on two main arguments in support of its Motion to Alter or Amend. First, Debtor argues that if no disclosure statement has been denied in a debtor's case, Local Rule 3016–1(c) provides the debtor with an opportunity to cure any deficiencies in a disclosure statement within fourteen (14) days of a hearing on the disclosure statement. Debtor states that because the Court did not enter an order denying approval of its Disclosure Statement prior to the March 3 Order dismissing Debtor's case, Debtor should have been given fourteen days to correct the problems with its Disclosure Statement.

Federal Rule of Bankruptcy Procedure 9029(a) gives courts the authority to "make and amend rules of practice and procedure" as long as those rules are consistent with Acts of Congress and do not "prohibit or limit the use of the Official Forms." These local rules cannot "create, modify or abrogate substantive rights" but instead regulate practice and procedure before this Court on matters where there is no other controlling law. SC LBR 1001–1(b)(1); 28 U.S.C. § 2075. " '[A] rule that impermissibly alters substantive rights is one that modifies "the rules of decision by which [a] court [resolves disputes]." ' " *In re Runkle,* 333 B.R. 734, 737 (Bankr.D.Md.

2005) (quoting *In re Greene,* 223 F.3d 1064, 1071–72 (9th Cir.2000)).

 SC LBR 3016–1(c) states:

If any plan of reorganization or disclosure statement filed by the debtor, trustee, or other plan proponent is not confirmed or approved by the Court, any amendment, modification, or supplement necessary to correct the deficiency must be filed within fourteen (14) days or whatever time period the Court may require. Failure to timely comply may be deemed a failure to prosecute the case and may constitute grounds for dismissal or conversion without further notice or hearing.

Debtor's argument is essentially that because approval of its Disclosure Statement was never previously denied, it is entitled to a fourteen day period to amend its Disclosure Statement before the Court can consider Ameris's Motion. Debtor's argument must fail. If SC LBR 3016–1(c) did in fact entitle a debtor to a fourteen day amendment period upon denial of its disclosure statement, this Rule would create a substantive right. As set forth above, local rules cannot create substantive rights, and therefore this construction of Rule 3016–1(c) cannot be correct. SC LBR 3016–1(c) is a procedural mechanism to advance case progress, merely providing that in the event a disclosure statement or plan is not approved, any modification to that document, if filed, must be filed within fourteen days. SC LBR 3016–1(c) does not create a safe harbor or guarantee two chances to obtain disclosure statement approval before a case can be dismissed.

Debtor filed a disclosure statement and added information twice, yet its Disclosure Statement remained deficient. Debtor had the benefit of one continuance of the Disclosure Statement hearing as well, but all to no avail. In addition to the lack of adequate information in the Disclosure Statement, it was apparent that Debtor would not be able to confirm its Plan. "[A] court may deny approval of a disclosure statement, even if it is not by itself deficient, if a debtor's plan has no hope of being confirmed." *In re Forest Grove, LLC,* 448 B.R. 729, 736 (Bankr.D.S.C.2011) (citing *In re Bermuda Bay, LLC,* Nos. 09–32133 and 09–32130, 2009 WL 5218071, at *3 (Bankr.E.D.Va. Dec. 31, 2009)). Debtor had no right to an additional period of time to provide an adequate disclosure statement before the Court considered Ameris's Motion. Additional time would not have remedied the underlying problem, the absence of a reasonable prospect for successful reorganization.

c. *Section 1112*

 Debtor's second argument is that the Court's Order erred in finding that cause existed for dismissal under 11 U.S.C. § 1112(b)(4)(A). Debtor primarily relies on the fact that there was no evidence presented to the Court indicating that Debtor's property was declining in value. In dismissing Debtor's case, the Court primarily relied on section 1112(b).[1] Section 1112(b)(1) provides:

Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing,

---

1. The Court did not consider or apply the December 2010 technical amendments. *See* Bankruptcy Technical Corrections Act of 2010, Pub.L. No. 111–327, 124 Stat. 3557 (Dec. 22, 2010). It relied on the less stringent pre-amendment statutory text. *See In re Ashley Oaks Dev. Corp.,* No. 10–04801–jw, slip

op., at 6 (Bankr.D.S.C. Mar. 29, 2011) ("[T]he defense to a motion to dismiss or convert appears more limited as it is now found solely in § 1112(b)(2).") (citing *In re Landmark Atl. Hess Farm, LLC,* No. 10–24656–DK, 2011 WL 831724, at *4 (Bankr.D.Md. Mar. 3, 2011)).

the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

A nonexclusive list of circumstances constituting cause is set forth in section 1112(b)(4). One such circumstance is set forth in subsection (A), which states that cause exists if there is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). This Court has very recently discussed in detail the two-step analysis that must be undertaken under this subsection of section 1112(b)(4). First, the Court must determine whether the debtor, post-petition, has failed to produce positive cash flow, or alternatively, whether the debtor's asset values are declining. *In re Om Shivai, Inc.*, 447 B.R. 459, 464 (Bankr.D.S.C.2011) (quoting *In re Landmark Atl. Hess Farm, LLC*, 447 B.R. 459, 464 (Bankr.D.Md.2011)). Second, the Court must determine that the debtor has no chance of rehabilitation. *Id.* Rehabilitation is different than reorganization; showing an ability to rehabilitate requires a showing that the debtor has actual business prospects and can "'reestablish [itself] on a firm, sound basis.'" *Id.* (quoting *In re Landmark Atl. Hess Farm, LLC*, 447 B.R. 459, 464 (Bankr.D.Md.2011)).

 Both prongs of this test are met. Debtor's monthly operating reports show no income. Debtor claimed throughout its case that Mr. Nickey Maxey, the manager and caretaker of Debtor's property and the trustee of the CLM Irrevocable Trust, would pay $2,000 per month in rent for the residence located on the property and would, if necessary, make additional contributions to Debtor. However, it appears that these monthly rent payments never materialized and throughout Debtor's case, no evidence was presented to establish Mr. Maxey's actual ability to make these payments, despite repeated requests for such information. Debtor's monthly operating reports consistently showed negative cash profits, and the two most recent reports showed declining amounts of cash on hand. Under these circumstances, it is immaterial whether or not Debtor's assets are declining in value, as it is clear that the first prong of the section 1112(b)(4)(A) analysis was met. *See In re Ashley Oaks Dev. Corp.*, No. 10–04801–jw, slip op., at 8 (Bankr.D.S.C. Mar. 29, 2011) (finding that the first prong of the section 1112(b)(4)(A) analysis was met based on continually decreasing cash available for operations).

Debtor also had no chance of rehabilitation. Debtor stated in its Disclosure Statement that it had the potential to earn income from a variety of endeavors, including harvesting of timber, a hunting preserve, and subdivision and sale of small lots. As the Court stated in its Order dismissing Debtor's case, "[N]o information is provided concerning the market for these endeavors or the income and expenses associated with them." *In re Forest Grove, LLC*, 448 B.R. 729, 735 (Bankr. D.S.C.2011). Debtor proposed to convey the equestrian facility located on Debtor's property to Ameris in its Plan; as a result, the facility could not be a future source of income for Debtor. Debtor's Plan appeared to rely entirely on contributions from Mr. Maxey. However, as stated above, no evidence was presented to show Mr. Maxey's ability to make any contributions to Debtor. Debtor did not have a reasonable likelihood of rehabilitation; as a result, the second prong of the section 1112(b)(4)(A) analysis was met.

Because both prongs of section 1112(b)(4)(A) were satisfied, cause existed

for dismissal. Further, section 1112(b)(2) was not met.[2] Debtor did not establish any unusual circumstances and did not show a reasonable likelihood that it could ever confirm a plan. Additionally, because the Court found that cause was established under section 1112(b)(4)(A), Debtor could not meet the requirements of section 1112(b)(2)(B). Debtor's case was properly dismissed for cause under section 1112(b)(4)(A).

## II. Motion to Stay Dismissal Order

Debtor requested that the Court stay the Order dismissing its case until its Motion to Alter or Amend is resolved, because a foreclosure sale was scheduled to take place on April 4, 2011, and if the sale took place, "the bankruptcy estate and all other creditors in this case will be irreparably harmed." Debtor's Stay Motion, docket entry # 64. Debtor's Stay Motion did not state any further basis for relief.

In *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) the United States Supreme Court set out a four-part test which this Court is required to use in deciding requests for injunctions. *See Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir.2009), *vacated on other grounds*, —— U.S. ——, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010); *In re Carolina Park Assoc., LLC*, No. 10–cv–1805–DCN, at 4 n. 3, 2010 WL 2756945 (D.S.C. July 12, 2010) ("Although the court has not found a case

that explicitly applies *Winter* in the motion to stay context, the court has analyzed CPA's motion under both [the *Blackwelder Furniture* and *Winter*] standards and the result under either is the same-the motion to stay must be denied.") The test requires a movant to prove: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 129 S.Ct. at 374. This Court now applies the *Winter* test to motions for stay pending appeal.

Debtor did not meet this test. First, Debtor did not set forth any specific facts or arguments in its Stay Motion that would satisfy any of these elements. Additionally, at the hearing on its Stay Motion, Debtor did not establish the four requirements set forth in *Winter*. Most significantly, Debtor did not establish it would suffer irreparable harm if the Court's Order was not stayed. To make a showing of irreparable harm, a movant must usually show that money damages or a later court decision will be inadequate to remedy the harm suffered. *MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, 726 F.Supp.2d 604, 634 (W.D.Va.2010) (quoting *Canon, Inc. v. GCC Int'l, Ltd.*, 263 Fed.Appx. 57, 62 (Fed.Cir.2008)). A possibility that irreparable harm could occur is not sufficient; rather, a movant must show that irreparable injury is *likely*. *Winter*, 129 S.Ct. at 375–76 ("Issuing a

2. 11 U.S.C. § 1112(b)(2) states:

The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—(A) there is a reasonable likelihood that a plan will be confirmed within

the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—(i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court.

preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.") (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997)). Debtor's counsel stated at the hearing that Debtor is currently attempting to exercise its rights in state court. Debtor's counsel also stated that Debtor would attempt to purchase the property at the foreclosure sale. Under these circumstances, Debtor has not shown irreparable harm. It is clear that Debtor has an alternative avenue for relief, as Debtor is already moving forward in state court. Additionally, it appears that the harm to Debtor, if any, could be adequately remedied by an award of monetary damages. *See Carolina Park*, 2:10–cv–1805–DCN, at 5 (rejecting an "impending foreclosure sale, and resulting loss of the property" as constituting irreparable harm). Debtor did not show that it will suffer irreparable harm in the absence of a stay of the Court's Order.

Since Debtor must meet all four requirements of the *Winter* test in order to be entitled to a stay, the Court need not consider the remaining three requirements, as Debtor did not show any likelihood of irreparable harm. Because Debtor did not satisfy the standard articulated in *Winter*, Debtor was not entitled to a stay of the Court's Order dismissing its case. Debtor's Stay Motion is denied.

### CONCLUSION

Debtor's Motion to Alter or Amend and Stay Motion are denied.

AND IT IS SO ORDERED.